**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL MCLAUGHLIN,

    Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Civil Action No. 17-11811 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Michael McLaughlin's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court affirms the Administrative Law Judge's ("ALJ") decision.

**I.    BACKGROUND**

    **A.    Procedural History**[1]

Plaintiff filed an application for disability on June 10, 2013, alleging an onset date beginning on October 17, 2012. (AR 70-71.) Plaintiff's claim was denied initially on September

---

[1] The Administrative Record is located at ECF Nos. 10-1 through 10-7. The Court will reference the relevant pages of the Administrative Record ("AR") and will not reference the corresponding ECF citations within those files.

25, 2013, and again upon reconsideration on January 30, 2014. (*Id.* at 70-77, 80-88.) The ALJ conducted an administrative hearing on May 24, 2016, following which the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 9-19, 24-68.) The Appeals Council denied Plaintiff's request for review on September 15, 2017. (*Id.* at 1-4.) On November 19, 2017, Plaintiff filed an appeal to the District Court of New Jersey. (ECF No. 1.) The Clerk issued a summons on November 20, 2017 (ECF No. 4), which Plaintiff returned executed on March 14, 2018 (ECF No. 6). Defendant filed the administrative record on April 10, 2018. (ECF No. 10.) This case was reassigned to Chief Judge Jose L. Linares on April 13, 2018. (ECF No. 11.) Plaintiff filed his moving brief on November 26, 2018, pursuant to Local Civil Rule 9.1. (ECF No. 17.) The Commissioner filed opposition on December 7, 2018 (ECF No. 18), and Plaintiff did not reply. On March 4, 2019, this case was reassigned to the Undersigned for all further proceedings. (ECF No. 19.)

**B.     Factual History**

Plaintiff is a fifty-one year-old male born on July 20, 1967. (AR 145.) He holds a high school diploma, and served twenty-three years on the New York City police force in Staten Island, primarily as a patrol officer. (*Id.* at 35-36.) Plaintiff filed his initial disability claim based on: "cervical fusion and discectomy," "cervical herniated disc, radiculopathy," "left shoulder impingement, status post surgery," and "lumbar bulging disc." (*Id.* at 70, 80.)

Plaintiff's medical problems began after he suffered a head-on collision while driving a patrol car on duty as a police officer in 2005, causing him to sustain an injury to his spine. (*Id.* at 352.) He underwent surgery in August of 2005 with Dr. Benjamin, and after extensive rehabilitative therapy, returned to the police force on light duty. (*Id.* at 315, 352, 367.) In 2010, Plaintiff "f[ell] down the stairs while on duty and reinjured his cervical and lumbar spine" and left

2

shoulder. (*Id.*) He then underwent left shoulder surgery in 2010 with Dr. Reilly. (*Id.* at 315.) In 2015, Plaintiff had additional cervical spinal surgery at New York University Hospital. (*Id.* at 354.)

At the hearing, Plaintiff testified that he resides in New Jersey with his girlfriend and two teenage daughters. (*Id.* at 33.) He testified that he has a driver's license, but cannot drive more than twenty-five miles at a time. (*Id.* at 34.) Plaintiff testified that he served as a police officer in Staten Island, and that after his injury, he was put on "restricted duty" and tasked with light desk work around the station house. (*Id.* at 35-36.) He testified that while he desired to return to full duty, he was not permitted to do so. (*Id.* at 37.) Plaintiff testified that he has not looked for any other work since being put on disability retirement "because of all the medical issues [he has] had" and because of his "chronic pain." (*Id.* at 41-42.)

Plaintiff testified that for pain, he takes Tramadol, Zanaflex, Mobic, and Flexeril. (*Id.* at 42.) He further testified that he cannot walk longer than twenty minutes at a time without falling, and that he can only sit for thirty minutes at a time because "[his] legs go numb." (*Id.* at 43-44.) Plaintiff stated that he has pain in his arms, neck, lower back, and shoulder. (*Id.* at 44.) Plaintiff has been treated with epidural and steroid injections, which have provided some relief. (*Id.* at 46.)

According to Plaintiff, he is able to do light housework such as sweeping the floor or cooking for himself. (*Id.* at 48.) Plaintiff testified that he is able to lift a gallon of milk, but tries not to lift anything heavier. (*Id.* at 52.) Plaintiff also testified that he suffers pounding headaches that he believes are triggered by neck pain from poor sleep quality. (*Id.* at 53-54.) Plaintiff stated that his medications make him very tired, and that "[he] is not able to stay up during an eight hour period." (*Id.* at 55.)

### C. The ALJ's Decision

On June 13, 2016, the ALJ rendered a decision. (*Id.* at 9-19.) The ALJ set forth the Social Security Administration's five-step sequential process for determining whether an individual is

3

disabled. (*Id.* at 9-11.) At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since October 17, 2012, the alleged disability onset date. (*Id.* at 11.) At step two of the analysis, the ALJ found that Plaintiff had the severe impairments of chronic cervical/lumbosacral radiculopathy; chronic traumatic cervical myeloradiculopathy; and multilevel cervical disc herniations. (*Id.*)

At step three, the ALJ determined that none of Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 11-12.) The ALJ next found that Plaintiff possessed the residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff can "lift/carry up to [ten] pounds"; "stand/walk [two] hours in an [eight] hour workday but needs the opportunity to sit for [five] minutes after [thirty] minutes of standing/walking"; "sit [six] hours in an [eight]-hour workday but needs the opportunity to stand for [five] minutes after [thirty] minutes of sitting, or is limited to a job that is posturally immaterial." (*Id.* at 12.) The ALJ found that Plaintiff can "occasionally climb ramps/stairs, but never climb ladders/ropes/scaffolds," "can frequently balance, kneel, crouch and crawl," and "can occasionally stoop, but never reach overhead," and that Plaintiff can "frequently handle and finger." (*Id.*) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (*Id.* at 18.) At step five, considering Plaintiff's age, education, and work experience, and relying on the testimony of the vocational expert ("VE"), the ALJ found that Plaintiff is able to perform the requirements of representative occupations available in significant numbers in the national economy, such as "video surveillance monitor," "telemarketer," and "information aide." (*Id.* at 18-19.) The ALJ, accordingly, found that Plaintiff has not been under a disability from October 17, 2012, through the date of the decision. (*Id.* at 19.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125, 127-28 (3d Cir. 1991); *Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an

explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted).

B. **Establishing Disability**

In order to be eligible for entitlements under the Social Security Act, a claimant must be unable "to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months . . . ." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, the claimant is disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The first step considers a claimant's work activity, if any. 20 C.F.R. § 416.920(a)(4)(i). To satisfy the first step, the claimant must establish that he has not engaged in any SGA since the onset of his alleged disability. *Id.* At the second step, the claimant must establish that he suffers from a severe impairment or "combination of impairments." 20 C.F.R. § 416.920(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant satisfies his burden, he proceeds to the third step. The third step of the evaluation procedure requires the claimant to provide evidence that his

impairment is equal to one of those impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant demonstrates that he suffers from a listed impairment or that his severe impairment is equal to a listed impairment, he is presumed disabled and is automatically entitled to benefits. *Id.* If his claim falls short, the eligibility analysis proceeds to step four.

The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits him to resume his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). "A claimant's RFC measures the most [he] can do despite [his] limitations." *Zirnsak*, 777 F.3d at 611 (internal quotation omitted) (citing 20 C.F.R. § 404.1545(a)(1)). If the Commissioner determines that the claimant cannot resume his past relevant work, the burden presumptively shifts to the Commissioner to show "the existence of other available work that the claimant is capable of performing." *Id.* at 612 (citations omitted). The Commissioner must show at step five that "given [the] claimant's age, education, and work experience, he . . . can still perform specific jobs that exist in the national economy." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979)); *see also* 20 C.F.R. § 404.1560. At this step, whether a claimant will receive benefits depends on the Commissioner's finding that the claimant is unable to perform work available in sufficient numbers in the national economy. *Zirnsak*, 777 F.3d at 612.

### III. **DISCUSSION**

Based on the Court's review of the ALJ's decision and the extensive record in the present case, the Court finds good cause to affirm the findings of the ALJ. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter*, 642 F.2d at 706-07. The ALJ in this matter provided sufficient analysis for the Court to review her findings and determine that substantial evidence supports her decision.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ improperly rendered a decision at step five of the sequential evaluation because she did not meet her burden of showing alternative work available in sufficient numbers in the national economy; (2) the ALJ did not afford proper weight to the opinions of Plaintiff's treating physicians, Dr. Chapman and Dr. Stiler; and (3) the ALJ improperly rejected Plaintiff's subjective complaints of "pain, numbness, and weakness." (Pl.'s Moving Br. 27, 29, 35, ECF No. 17.) The Court will analyze these arguments in turn.

### A. The ALJ's Findings at Step 5

Plaintiff argues that the ALJ did not meet her burden at step five of the sequential evaluation by showing that work exists in significant numbers in the national economy that Plaintiff could perform based on his RFC, age, education, and work experience. (*Id.* at 27-28.)

The Third Circuit has repeatedly held that an ALJ is entitled to rely on the testimony of a VE in rendering a finding at step five of the sequential evaluation. "The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and [RFC] . . . The ALJ will often seek the assistance of a [VE] at this fifth step." *Fargnoli*, 247 F.3d at 39 (citing *Podedworny*, 745 F.2d at 218); *see Sykes v. Apfel*, 228 F.3d 259, 266-72 (3d Cir. 2000) (holding that additional testimony from the VE was required to sustain a finding that non-exertional impairments have not significantly eroded a claimant's RFC); *see also Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999) (holding that the ALJ's reliance on hypotheticals by the ALJ in rendering the finding at step five was not erroneous); *Rutherford v. Barnhart*, 399 F.3d 546, 554-55 (3d Cir. 2005) (affirming the ALJ's reliance on hypotheticals in making a step five determination).

Here, the ALJ posed extensive hypotheticals to the VE at the hearing, which incorporated Plaintiff's RFC limitations, and which she relied upon in making her findings. (AR 19, 57-67.)

Specifically, the ALJ relied on the VE's answers to the hypotheticals in finding that there existed jobs in the national economy that comported with Plaintiff's RFC. (*Id.*) Plaintiff's argument, therefore, is unpersuasive and unavailing.

## B. The ALJ's Findings Regarding Plaintiff's Physicians

Plaintiff takes issue with the ALJ's failure to afford more weight to the reports of Plaintiff's treating neurologist, Dr. Igor Stiler, and Plaintiff's treating pain management specialist, Dr. Kenneth Chapman. (Pl.'s Moving Br. 29-34.) Plaintiff argues that the opinions of his treating physicians are entitled to great weight, stating that they are "uncontradicted" within the record. (*Id.* at 31.)

Pursuant to regulation, a treating doctor's opinion is afforded controlling weight if the "treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairments(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(c)(2); *see also Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011). "State agent opinions merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); s*ee also Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011) ("As the ALJ clearly explained why [he] gave greater weight to the opinion of [the state agency physician], [his] decision was supported by substantial evidence and was not contrary to law.") (citation omitted).

In accordance with Third Circuit precedent, the ALJ relied on two separate state agency physicians in rendering her decision, affording partial weight to the opinions of state doctors Dr. Zwi Kahanowicz and Dr. Nancy Simpkins. (AR 16.) The ALJ supported her findings with the state doctors' evaluations because Plaintiff's "sitting, balancing, kneeling, crouching and crawling limitations [were] consistent with the overall evidence" and because "the record reveal[ed] no significant impairments that would interfere with the above activities." (*Id.*) Notably, the ALJ did

9

not afford great weight to all of the state agency experts' conclusions, finding that their opinions regarding some of Plaintiff's limitations were not consistent with the overall record.[2] (*Id.*) The ALJ's decision demonstrates that, in making her findings, the ALJ evaluated and weighed whether the opinions were consistent with record evidence. The ALJ was under no obligation to accept the opinion of a treating physician in relation to the physician's status but was instead required to make factual findings and weigh medical evidence in accordance with the relevant standards. *See Cotter*, 642 F.2d at 705-06. The ALJ did so here.

Additionally, although Plaintiff argues that the ALJ should have afforded more weight to Plaintiff's treating physicians' determinations that Plaintiff is permanently disabled, the ALJ is not obligated to accept opinions of any outside source on the ultimate issue. (Pl.'s Moving Br. 31); *Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.").

Here, the ALJ's discretion to rely on two separate state agency physicians as a factual basis for a finding of non-disability is supported by Third Circuit precedent. *Brown*, 649 F.3d at 196-97

---

[2] The ALJ further explained the relative weight she afforded to the state agency experts' opinions, which are reflected in her RFC findings:

> I find these consultants overestimated [Plaintiff's] standing, walking, lifting, carrying, climbing and manipulative abilities, as they failed to give appropriate consideration to the claimant's increased pain and other symptoms with prolonged walking/standing, lifting/carrying of heavy objects, climbing and manipulative functions; accordingly, these portions of these opinions are assigned little weight. Finally, I find it appropriate to adopt a sit/stand option or limit the claimant to work that is posturally immaterial, as more fully set forth in the residual functional capacity above; these consultants' failure to recognize such a restriction renders their opinions less consistent with the record as a whole and thus less weight is assigned to these portions of their opinions.

(AR 16.)

(holding that the ALJ's decision not to credit the plaintiff's subjective limitations was supported by the substantial evidence of the state agency expert's opinion and observational medical evidence contained within the treating physician's reports); *see also Chandler*, 667 F.3d at 361; *Jones*, 954 F.2d at 129; *Newhouse*, 753 F.2d at 285-86. The Court, therefore, finds that the ALJ's RFC findings were based on substantial evidence.

### C. Plaintiff's Subjective Complaints of Pain

Plaintiff argues that the ALJ did not afford proper weight to Plaintiff's subjective complaints of chronic neck and back pain, supported by the opinions of his treating physicians. (Pl.'s Moving Br. 37-38.)

Plaintiff is correct that both treating physicians' opinions and his subjective complaints of pain are to be afforded due weight. *See Morales*, 225 F.3d at 318; *Podedworny*, 745 F.2d at 217. An ALJ, however, "is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw [her] own inferences." *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986) (citation omitted).

While a plaintiff will not be able to establish disability by subjective complaints of pain alone, "[a]n ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work [if the] testimony is supported by competent medical evidence." *Schaudeck*, 181 F.3d at 433. The ALJ "can reject such claims if [she] does not find them credible" as long as the decision contains a thorough discussion of the reasons behind the findings contained within it. *Id.* (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)). "[A] statement by a plaintiff's treating physician supporting an assertion that [he] is 'disabled' or 'unable to work' is not dispositive of the issue." *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994) (citing *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990)); *see also Jones*, 954 F.2d at 129 ("[T]he opinions offered by [the claimant's] treating physicians were conclusory and

unsupported by the medical evidence. . . . Further, these opinions were not uncontradicted."). Finally, the Third Circuit has held that "test results alone are insufficient to support a claim of disability," and that an ALJ is entitled to afford greater weight to physicians' notes reflecting a plaintiff's presentation as normal, than to subjective complaints alone. *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004).

Here, the ALJ thoroughly discussed each doctor's treatment history and the relative weight she afforded to each opinion. (AR 12-18.) The ALJ specifically credited Plaintiff's subjective complaints of pain in rendering the RFC, and withheld weight from the state agency experts' conclusions where appropriate. (*Id.* at 16.) The ALJ also found that Plaintiff's "self-reported activities of daily living [were] inconsistent with an individual experiencing totally debilitating symptomatology[,]" because Plaintiff admittedly "prepare[d] simple meals, showered independently, read the newspaper, folded laundry, socialized with others, had no trouble getting along with others, followed instructions [okay], got along [okay] with authority figures, and handled stress/routine changes [okay]." (*Id.* at 13-14.) The ALJ recalled that at the hearing, Plaintiff did not demonstrate "antalgic gait or any observable physical issues," and that physical examination by Dr. Stiler in 2016 had "revealed a normal gait, intact sensation, full motor strength and normal reflexes, albeit with limited cervical range of motion." (*Id.* at 14, 16.) Finally, the ALJ explained that the opinions of Plaintiff's treating physicians were inconsistent with the objective medical evidence and "[were] inconsistent with both treatment records and [Plaintiff's] own admissions regarding his abilities." (*Id.* at 17.)

Ultimately, it is not the Court's role to re-weigh the evidence, either against or in favor of Plaintiff, or to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359 (citing *Richardson*, 402 U.S. at 401). The Court, accordingly, finds that the ALJ's decision was supported by substantial evidence, and finds good cause to affirm her decision.

## IV. CONCLUSION

For the foregoing reasons, the decision of the ALJ is affirmed. An Order consistent with this Memorandum Opinion will be entered.

                                                  s/Michael A. Shipp
                                                  **MICHAEL A. SHIPP**
                                                  **UNITED STATES DISTRICT JUDGE**

**Dated:** March 31, 2019